Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY SCHNUPP,<br><br>                       Plaintiff,<br><br>              vs.<br><br>RADIUS HEALTH, INC., WILLARD H. DERE, CATHERINE FRIEDMAN, JEAN-PIERRE GARNIER, OWEN HUGHES, JENNIFER A. JARRETT, KELLY MARTIN, SEAN MURPHY, MACHELLE SANDERS, SUSAN VISSERS LISA, and ANDREW C. VON ESCHENBACH,<br><br>                       Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Timothy Schnupp ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against Radius Health, Inc. ("Radius" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants'

efforts to sell the Company to a Purchasers consisting of Gurnet Point Capital, LLC ("Gurnet") and Patient Square Capital ("Patient Square") through merger vehicle Ginger Merger Sub, Inc. ("Merger Sub" and collectively with Gurnet and Patient Square, "Consortium") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 23, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Radius's common stock will be converted into the right to receive $10.00 in cash, without interest as well as a Contingent Value Right which may entitle the holder to receive a maximum of a $1.00 cash payment. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

3.      Thereafter, on July 13, 2022, Radius filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to the Consortium.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and

executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Radius shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Radius, provided by Radius to the Company's financial advisor J.P. Morgan Securities LLC ("JP Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by JP Morgan and provided to the Company and the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Maryland and, at all times relevant hereto, has been a Radius stockholder.

10.     Defendant Radius is a biopharmaceutical company, focuses on addressing unmet medical needs in the areas of bone health, orphan diseases, and oncology. Radius is incorporated in Delaware and has its principal place of business at 22 Boston Wharf Road, 7th Floor, Boston,

MA.  Shares of Radius common stock are traded on the Nasdaq Stock Exchange under the symbol "RDUS".

11.     Defendant Willard H. Dere ("Dere") has been a Director of the Company at all relevant times.

12.     Defendant Carlton Friedman ("Friedman") has been a director of the Company at all relevant times.

13.     Defendant Jean-Pierre Garnier ("Garnier") has been a director of the Company at all relevant times.

14.     Defendant Owen Hughes ("Hughes") has been a director of the Company at all relevant times.

15.     Defendant Jennifer A. Jarrett ("Jarrett") has been a director of the Company at all relevant times.

16.     Defendant Kelly Martin ("Martin") has been a director of the Company at all relevant times.

17.     Defendant Sean Murphy ("Murphy") has been a director of the Company at all relevant times.

18.     Defendant Machelle Sanders ("Sanders") has been a director of the Company at all relevant times.

19.     Defendant Susan Vissers Lisa ("Vissers Lisa") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Consortium consists of two separate privately held individual investment management funds.

22.     Non-Party Merger Sub is a wholly owned subsidiary of Consortium created to effectuate the Proposed Transaction.

### JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

26.     Radius Health, Inc. a biopharmaceutical company, focuses on addressing unmet medical needs in the areas of bone health, orphan diseases, and oncology. The company's commercial product is TYMLOS, an abaloparatide injection for the treatment of postmenopausal women with osteoporosis. It is also developing abaloparatide-SC, which is in Phase III clinical trials for the treatment of osteoporosis in men; abaloparatide-TD, a transdermal system that is in Phase III clinical trials to treat postmenopausal women with osteoporosis; Elacestrant (RAD1901), a selective estrogen receptor degrader, which is in Phase III clinical trials for the treatment of hormone-receptor positive breast cancer; and RAD011, which is in Phase II clinical trials for treatment of hyperphagia related to Prader-Willi syndrome. The company has collaborations and license agreements with 3M Company; Ipsen Pharma SAS; Teijin Limited; Berlin-Chemie AG; Eisai Co. Ltd.; and Duke University. Radius Health, Inc. was founded in 2003 and is headquartered in Boston, Massachusetts.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 5, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted that they had an additional patent granted by USPTO for TYMLOS, extending exclusivity to January 10, 2040. Further, the Company reported that their Elacestrant drug was on schedule for US regulatory submission in Q2 2022.

28.     Speaking on the positive results, CEO Kelly Martin explained that despite market wide challenges "Radius continues to have the opportunity to differentiate itself by remaining active with the balance sheet and monitoring cash flow, managing the risk/reward dynamics of the

three assets and, lastly, incorporating overall corporate timelines and potential business inflection points."

29.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Radius.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Radius to enter into the Proposed Transaction without providing requisite information to Radius stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     The Recommendation Statement fails to adequately disclose adequate information regarding the Board's reasoning for negotiating a Contingent Value Right as part of the consideration to be paid to Plaintiff, and further, why the Board would agree to consideration that is uncertain.

33.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including The Consortium, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.  The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any

entered confidentiality agreement entered into between the Company and any potentially interested third parties, including The Consortium, throughout the sales process, if any, would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

35.     On June 23, 2022, Radius and Consortium issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **BOSTON and CAMBRIDGE, Mass., June 23, 2022 (GLOBE NEWSWIRE)** - Radius Health, Inc. ("Radius" or the "Company") (Nasdaq: RDUS) today announced that it has entered into a definitive agreement to be acquired by Gurnet Point Capital ("Gurnet Point") and Patient Square Capital ("Patient Square") in a transaction valued at approximately $890 million, including the assumption of debt and assuming full payment of the CVR (Contingent Value Right). Debt financing for this transaction will be provided by OrbiMed Advisors, LLC.
>
> Under the terms of the merger agreement, an entity jointly owned by Gurnet Point and Patient Square will initiate a tender offer to acquire all of the outstanding shares of Radius for $10.00 per share in cash plus a CVR of $1.00 per share payable upon TYMLOS® (abaloparatide) net sales reaching $300 million (inclusive of U.S. sales and Japan royalties or supply payments based on supply of TYMLOS for sale in Japan) during any consecutive 12-month period prior to December 31, 2025.
>
> Including the CVR payment, Radius shareholders will receive up to an aggregate of $547 million in cash. The upfront payment at closing represents a premium of 45% over the 30-day volume-weighted average price (VWAP) of Radius's common stock, and inclusive of the CVR payment, a 59% premium.
>
> "The acquisition of Radius by Gurnet Point and Patient Square provides our shareholders with attractive, immediate value at a compelling premium, in addition to the potential future upside of TYMLOS through the CVR," said Owen Hughes, Chairman of Radius Health. "Today's announcement of the acquisition, which has been unanimously approved by the Radius Board, is the culmination of a thorough and rigorous strategic review process conducted over nine months by the Board and management with the assistance of external advisors. The extensive review included outreach to and interaction with multiple strategic parties and financial sponsors on all parts of our business. We are confident that this transaction

maximizes value for shareholders and provides the clearest path forward for Radius."

Kelly Martin, Chief Executive Officer of Radius, said, "This transaction provides shareholders with immediate value in addition to the potential future upside from the CVR. Over the past two years we have worked tirelessly to improve the business fundamentals of Radius. We are proud of what Radius and its dedicated employees have achieved to date."

Travis Wilson, Partner at Gurnet Point, said, "We are delighted to be acquiring Radius and providing additional resources to the Company during this critical time. We fully believe in the value of the Company's portfolio and are looking forward to working closely with the Company to deliver a positive impact for patients."

Jim Momtazee, Managing Partner at Patient Square Capital, stated, "Our investment approach is centered on backing businesses that improve patient lives and consistent with that we are excited to work with Radius to expand access to an important therapeutic."

**Tender Offer and Transaction Details**

Under the terms of the merger agreement, an entity jointly owned by Gurnet Point and Patient Square will promptly commence a tender offer for all outstanding shares of Radius common stock at a price of $10.00 per share in cash plus a CVR of $1.00 per share that is payable upon TYMLOS® (abaloparatide) net sales reaching $300 million (inclusive of U.S. sales and Japan royalties or supply payments based on supply of TYMLOS for sale in Japan) during any consecutive 12-month period prior to December 31, 2025. Radius' Board of directors unanimously recommends that Radius shareholders tender their shares in the tender offer. Upon the successful completion of the tender offer, the acquisition subsidiary will be merged into Radius, and any remaining shares of common stock of Radius that were not tendered in the tender offer will be canceled and converted into the right to receive the same consideration payable in the tender offer.

The transaction, which has been unanimously approved by the members of the Radius Board, is expected to close in the third quarter of 2022, subject to customary closing conditions, including Radius shareholders tendering a minimum number of shares and receipt of regulatory approvals. The transaction is not subject to a financing condition.

Following completion, Radius will become a private company and will no longer be subject to the reporting requirements of the Securities Exchange Act of 1934, as

amended, nor be traded on Nasdaq Global Market. The Company plans to maintain operations in the Boston, MA and Wayne, PA areas.

***Potential Conflicts of Interest***

36.    The breakdown of the benefits of the deal indicates that Radius insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Radius.

37.    Notably, Company insiders, currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Though the Recommendation Statement provides only a partial accounting, which fails to account for the cash consideration in which the stock will be exchanged as follows:

| Name | Number of Shares Beneficially Owned (#) | Cash Consideration for Shares ($) | CVR Consideration for Shares ($) |
|---|---|---|---|
| *Executive Officers* | | | |
| G. Kelly Martin | — | — | — |
| Mark William Conley | — | — | — |
| Danielle Holtschlag | — | — | — |
| Elizabeth Messersmith, Ph.D. | 1,666 | 16,660 | 1,666 |
| Chhaya Shah | 19,166 | 191,660 | 19,166 |
| *Directors* | | | |
| Owen Hughes | 16,150 | 161,500 | 16,150 |
| Catherine J. Friedman | 21,300 | 213,000 | 21,300 |
| Jean-Pierre Garnier, Ph.D. | 21,300 | 213,000 | 21,300 |
| Andrew C. von Eschenbach, M.D. | — | — | — |
| Willard H. Dere, M.D. | 17,695 | 176,950 | 17,695 |
| Machelle Sanders | — | — | — |
| Sean Murphy | 5,500 | 55,000 | 5,500 |
| Susan Vissers Lisa | — | — | — |
| Jennifer Jarrett | — | — | — |

38.    Notably, Company insiders, currently own large, illiquid portions of Company stock, stock option, restricted share, or other equity award, which will be exchanged for the merger

consideration. The Recommendation Statement, however, provides an accounting of these options as follows:

| Name | Number of Unvested Company Stock Options (#) | Value of Unvested Company Stock Options ($) | Maximum Value of CVRs in respect of Unvested Company Stock Options ($) | Number of Vested Company Stock Options (#) | Value of Vested Company Stock Options ($) | Maximum Value of CVRs in respect of Vested Company Stock Options ($) | Number of Unvested Company RSUs (#) | Value of Unvested Company RSUs ($) | Maximum Value of CVRs in respect of Unvested Company RSUs ($) |
|---|---|---|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | | | | |
| G. Kelly Martin | 263,542 | — | — | 311,458 | — | — | 315,000 | 3,150,000 | 315,000 |
| Mark William Conley | — | — | — | — | — | — | 50,000 | 500,000 | 50,000 |
| Danielle Holtschlag | 50,000 | — | — | — | — | — | 25,000 | 250,000 | 25,000 |
| Elizabeth Messersmith, Ph.D. | 82,500 | — | — | 37,500 | — | — | 68,334 | 683,340 | 68,334 |
| Chhaya Shah | 46,981 | — | — | 113,019 | — | — | 78,334 | 783,340 | 78,334 |
| *Directors* | | | | | | | | | |
| Owen Hughes | 10,000 | 36,000 | 10,000 | 211,694 | 65,788 | 32,894 | 5,500 | 55,000 | 5,500 |
| Catherine J. Friedman | 10,000 | 36,000 | 10,000 | 143,800 | — | — | 5,500 | 55,000 | 5,500 |
| Jean-Pierre Garnier, Ph.D. | 10,000 | 36,000 | 10,000 | 143,800 | — | — | 5,500 | 55,000 | 5,500 |
| Andrew C. von Eschenbach, M.D. | 32,500 | 36,000 | 10,000 | 7,500 | — | — | 5,500 | 55,000 | 5,500 |
| Willard H. Dere, M.D. | 10,000 | 36,000 | 10,000 | 158,800 | — | — | 5,500 | 55,000 | 5,500 |
| Machelle Sanders | 32,500 | 36,000 | 10,000 | 7,500 | — | — | 5,500 | 55,000 | 5,500 |
| Sean Murphy | 32,500 | 36,000 | 10,000 | 37,500 | — | — | 5,500 | 55,000 | 5,500 |
| Susan Vissers Lisa | 30,000 | 124,800 | 30,000 | — | — | — | — | — | — |
| Jennifer Jarrett | 30,000 | 124,800 | 30,000 | — | — | — | — | — | — |

39.     In addition, certain employment agreements with certain Radius executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

| Named Executive Officer | Cash ($) | Equity ($) | Benefits ($) | Tax Reimbursements ($) | Tax Cutback Amount ($) | Total ($) |
|---|---|---|---|---|---|---|
| G. Kelly Martin | 2,100,000 | 3,465,000 | 41,785 | — | — | $5,606,785 |
| Steven Helwig | 280,000 | 249,799 | — | — | — | $ 529,799 |
| Danielle Holtschlag | 351,000 | 275,000 | 32,370 | 25,797 | — | $ 684,167 |
| Chhaya Shah | 950,000 | 861,674 | 62,677 | — | — | $1,874,351 |
| James Chopas | — | — | — | — | — | — |
| Salvador Grausso | — | — | — | — | — | — |

40.     The Recommendation Statement also fails to adequately disclose communications

regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Radius, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

42.     On July 13, 2022, the Radius Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

      a.  Whether the terms of any confidentiality agreements entered during the sales process between Radius on the one hand, and any other third party (including The Consortium), if any, on the other hand, differed from one another, and if

so, in what way;

b. The reasoning why the Board agreed to the terms of the CVR, making the amount of consideration paid to Common stockholders uncertain;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including the Consortium entities) throughout the sales process, if any, would fall away; and

d. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Radius's Financial Projections*

44.     The Recommendation Statement fails to provide material information concerning financial projections for Radius provided by Radius management and relied upon by JP Morgan in its analyses.   The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.     Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, JP Morgan notes that it reviewed, "certain internal financial analyses and forecasts prepared by the management of the Company relating to its business."

46.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Radius management provided to the Board and JP

Morgan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With regard to *Radius Projections* for Radius prepared by Radius management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in JP Morgan analyses:

    a.  With regard to the *Initial TYMLOS Projections*:

        i.  The underlying inputs, metrics, and assumptions used to determine a change in costs for years 2022-2035

        ii.  The underlying inputs, metrics, and assumptions used to determine a growth rate in US osteoporosis market of 0.5% per year;

        iii.  The underlying inputs, metrics, and assumptions used to determine a 2021 TYMLOS subcutaneous injection ("SC") female market share of 25%;

        iv.  The underlying inputs, metrics, and assumptions used to determine a peak TYMLOS SC female market share of 33%;

        v.  The underlying inputs, metrics, and assumptions used to determine a peak TYMLOS SC male market share of 6%; and

        vi.  The underlying inputs, metrics, and assumptions used to determine a wholesale acquisition cost of $2,122.

        vii.  EBIT, including all underlying inputs, metrics, and assumptions,

including specifically: product cost of goods sold, Ipsen royalties, research and development expenses, selling, general and administrative expenses and depreciation and amortization.

b.  With regard to the *February Wholeco Projections*:

    i.  Unlevered Free Cash Flows, including all underlying inputs, metrics, and assumptions, including specifically: capital expenditures, changes in net working capital, and milestone payments.

c.  With regard to the *February TYMLOS Projections*:

    i.  The Recommendation Statement fails to provide the inputs and assumptions used to determine the change in product costs ranging for ears 2022-2035, and

    ii.  EBIT, including all underlying inputs, metrics, and assumptions, including specifically: product cost of goods sold, Ipsen royalties, research and development expenses, selling, general and administrative expenses and depreciation and amortization.

d.  With regard to the *June Wholeco Projections*:

    i.  Unlevered Free Cash Flows, including all underlying inputs, metrics, and assumptions, including specifically: capital expenditures, changes in net working capital, and milestone payments;

    ii.  The underlying inputs, metrics, and assumptions used to determine a reduced TYMLOS SC female market share of 29%.

e.  With regard to the *June TYMLOS Projections*:

    i.  The Recommendation Statement fails to provide the inputs and

assumptions used to determine the change in product costs for years 2022-2035.

48.     The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of JP Morgan's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by JP Morgan*

51.     In the Recommendation Statement, JP Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52.     With respect to the *Public Trading Multiples Analysis*, the Recommendation Statement fails to disclose the following:

      a.   The individual metrics for each company compared; and

   b. The underlying inputs, metrics, and assumptions used to determine FV/2023E Net Revenue Multiple reference range for the Company of 1.5x to 2.7x.

53. With respect to the *Selected Transactions Analysis* section, the Recommendation Statement fails to disclose the following:

   a. The value of each selected transaction compared;

   b. The specific metrics for each selected Transaction;

   c. The specific FV/CY+5 Net Revenue Multiple of each company compared; and

   d. The inputs metrics and assumptions used to determine a FV/CY+5 Net Revenue Multiple reference range for the Company of 1.4x to 3.0x;

54. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

   a. The specific inputs and assumptions used to determine a range of discount rates from 9.5% to 12.5%;

   b. The weighted average cost of capital for the Company;

   c. The specific present value of the unlevered free cash flow;

   d. The specific inputs used for the impact of certain net operating losses;

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Radius stockholder.

As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

59.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

60.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

63.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

64.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Individual Defendants)

65.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

66.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

67.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

68.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

69.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

70.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

71.     Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

74.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Radius's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.     The Individual Defendants acted as controlling persons of Radius within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Radius to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Radius and all of its employees.  As alleged above, Radius is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 18, 2022                     **BRODSKY & SMITH**

By:   */s/ Evan J. Smith* _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*